# THE CITY OF ROCKFORD

## *v.*

## TOMPKINS TRIPP.

1. NEGLIGENCE—*of city in providing hitching posts.* If there be any duty resting upon a city in regard to the sufficiency of hitching posts it may provide, it is not bound to see that absolutely safe posts are set, and no more

than ordinary care in the selection and setting of them is required. If they are such as would be reasonably sufficient, under all ordinary circumstances, for the purpose intended, the city will not be liable for injury caused by the breaking of one by a team fastened to it, and its running over a person.

2. SAME—*no recovery where the injury is too remote.* Where a horse with a cutter became frightened and ran away, and, in passing where a team was hitched to a post set by a city for a hitching post, frightened the team and caused them to break the post and run, and they, after running some distance, ran over a person in the street and injured him, it was *held*, in an action by him against the city, that the injury was too remote and was not the proximate consequence of the defect in the post, and that the city was not liable.

APPEAL from the Circuit Court of Winnebago county; the Hon. WILLIAM BROWN, Judge, presiding.

This was an action on the case, by the appellee against the appellant, to recover for a personal injury caused by a runaway team.

The defendant filed the general issue, and a trial was had, resulting in a verdict of $80 in favor of the plaintiff. The defendant moved for a new trial, which the court overruled, and rendered judgment on the verdict, to which ruling the defendant excepted.

Mr. C. M. BRAZEE, for the appellant.

Messrs. CRAWFORD & MARSHALL, for the appellee.

Mr. CHIEF JUSTICE SHELDON delivered the opinion of the Court:

This was an action on the case, brought by the plaintiff, Tripp, against the City of Rockford, to recover for injuries received by him in consequence of being run over while in the street, by a runaway team. The plaintiff recovered, and the defendant appealed to this court.

The circumstances of the occurrence were, that in the fall of 1872, the city authorities caused ten hitching posts to be set on First street, in the city. On the first day of February, 1873, a double team, attached to a sleigh with a wood rack on, was

tied to one of these posts by very strong halter straps. A single horse in a cutter was being driven along on First street toward the team so hitched, when the horse suddenly became frightened, from the breaking of something connected with the cutter, and unmanageable, and ran away. The horse ran upon the sidewalk in front of the team, some ten feet from it, and then followed down the sidewalk to the team; as it approached, the team jumped back and pulled by the halters, but not getting loose, jumped forward again over the post as the horse and cutter came near, and pushed the neck-yoke over the post, and as the single horse came drawing the cutter up to them, the horses' legs of the team were struck, causing the same again to jump back with the neck-yoke over the post, and at the same time the side of the cutter struck the post, breaking the cross-bar of the cutter, when the post broke. Thereupon, the frightened team ran, first south on First street to the corner of the block, then west on Walnut street to the next corner, then north on Main street to the next corner, and were again about turning east up State street, when they came in contact with Tripp and one Minot, standing or slowly moving in the street, at a place some nine hundred feet distant from the starting point, and caused the injury complained of.

The negligence charged against the city is in the defectiveness of the hitching post; in its being cross-grained and brash, as testified to by witnesses who saw the post after it had been broken. We fail to see that the evidence makes out a case of actionable negligence against the city. These posts were selected sawed oak posts, their size being 5 x 5 inches at the butt and 5 x 5½ inches at the top. They had been set the fall before; the chairman of the street committee having ordered selected sawed oak posts for the purpose, and the lumber dealer having furnished, on the order, selected sawed oak posts. The latter testified that such were the posts he furnished, and that " selected posts are perfect posts, such as I should cull— no bad ones among them "—and that such posts were quite generally used for hitching posts.

There is no proof that there was any defect apparent in any of these posts at the time they were set, or that the city, at any time, had notice of any defect. There is no duty imposed by law upon the city to provide or maintain hitching posts. If there may be supposed to be any duty resting upon the city in regard to the sufficiency of the posts, as arising from having undertaken to set them, there could be no such duty as to see that absolutely safe posts were set; but no more would be required, as we conceive, than the exercise of ordinary care in the setting of such posts as would be reasonably sufficient, under all ordinary circumstances, for the purpose of hitching posts. We are unable to perceive, from the evidence, in what respect, here, the city has failed in the full measure of such duty.

We are inclined, also, to regard the injury here as too remote, and that it was not the proximate consequence of the defect of the hitching post, and that on this ground the defendant is not liable; that the injury is to be considered as one of those accidents for which a town or city is not responsible. See *Marble* v. *City of Worcester*, 4 Gray, 395.

Regarding the verdict as clearly unsustained by the evidence, and that no cause of action is shown against the city, the judgment is reversed.

*Judgment reversed.*